PER CURIAM.
The issue before the judge of compensation claims (“JCC”) in this ease was whether the employer “made an informed conclusion that the [employee’s pre-existing] condition was permanent and was or likely would be a hindrance to employment....” Special Disability Trust Fund v. Artisan Woodcrafters, Inc., 447 So.2d 955 (Fla. 1st DCA 1984). Because a critical finding is unsupported by competent substantial evidence and because it appears the JCC may have overlooked critical evidence, we reverse and remand for clarification.
The employee, Vick, was injured in an accident while working for the employer, Gold Coast, on July 11, 1988. Vick injured his lower back while attempting to pull some pipe out of the ground. In 1980, before Gold Coast hired him, he had been involved in an accident in which he ruptured a disc in the L4-L5 region, for which he had low back surgery. Dr. Luedke treated Vick after the 1988 industrial accident, and opined that Vick had aggravated his pre-existing condition in the 1988 industrial accident, and as a result had additional permanent impairment after maximum medical improvement. Vick settled his workers’ compensation claim, except for future medical benefits.
The employer/carrier sought reimbursement from the Special Disability Trust Fund (“Fund”). The Fund acknowledged that Vick had a pre-existing permanent impairment to his lower back, that there was a medical merger and permanent impairment as a result of the 1988 accident, and that there had been payments of excess compensation. The Fund took the position that there had been no informed conclusion by the employer about the pre-existing condition prior to the 1988 accident.
Vick testified he told Drew, owner and president of Gold Coast, of his prior back surgery and resulting restrictions when he was hired. He said he specifically told Drew that he could do the chief driller job, but had had back surgery in the early 1980s. He said they discussed that the job would not require heavy lifting. Vick also said it would have been obvious he had surgery because they often worked without shirts, and he had a scar.
In his deposition, Drew said he did not remember Vick and did not remember an accident. He read over two affidavits he had signed and said they did not refresh his recollection, but that he would not have signed them if he had not had knowledge of the facts contained in them. These affidavits stated, in pertinent part:
Prior to July 11, 1988, I was aware that Mr. Vick had experienced back problems. He told me of his injury. I was also aware that Mr. Vick had been involved in an automobile accident prior to July 11, 1988, *933 while employed here. In that accident, he injured his back.
I felt that his pre-existing back injuries were permanent in nature, and could have been a hindrance or obstacle to his employment. Even with my knowledge of his prior back injuries, he was allowed to remain as an employee of Goldcoast Engineering & Testing Company, Inc. (Affidavit dated January 9, 1989)
Prior to July 11, 1988, I was aware that Mr. Vick had experienced back problems. He told me of his back injury. I was also aware that Mr. Vick had been involved in an automobile accident prior to July 11, 1988, while employed here. In that accident, he injured his back. I realize that injuries to the back are significant and that the worker rarely recovers one hundred percent (100%), even though he is able to return to the same job full time. I realize these significant injuries had the potential to make a subsequent accident more severe and could be a hindrance or obstacle to his employment, and I felt his prior back injuries were permanent in nature. (Affidavit dated November 20, 1990)
At hearing, Drew said he had since remembered Vick as one of the hardest workers he had ever had, was aware of his prior back surgery, and was sure Vick had told him about it.
The JCC found that the employer had not made an informed conclusion before the industrial accident, and denied the claim for reimbursement. The pertinent portion of the order provides:
The evidence only shows that the employer knew that Mr. Vyse (sic) had had prior low back problems as a result of an automobile accident. Mr. Drew clearly testified in his deposition that he did not make any conclusions regarding permanency of Mr. Vick’s low back prior to the accident.
The employer in this case had knowledge of the fact that Mr. Vick had a prior low back problem. They, however, did not make the necessary conclusion that the back problem was permanent. I specifically find that the employer did not conclude, prior to the instant accident, that the employee had a preexisting permanent physical impairment that was permanent, (e.s.)
Because the critical finding underlined above is not supported by competent substantial evidence in the record, and because it is not clear whether the JCC considered Drew’s affidavits, we reverse and remand for clarification.
In his deposition, Drew stated that he did not have any independent recollection of Vick, and did not have any independent knowledge of the content of the affidavits at that time. On cross-examination about the affidavits, he continued to state that he did not remember the information reflected in the affidavits, what kind of back problems Vick had, or when Vick told him about them. He reiterated that he had no independent recollection of the facts contained in the affidavits. Throughout the deposition, Drew repeated that he did not independently recall Vick or the facts of the ease. Therefore, the JCC’s finding that “Mr. Drew clearly testified in his deposition that he did not make any conclusions regarding permanency of Mr. Vick’s low back condition prior to the accident” is not supported by competent substantial evidence.
The Fund argues on appeal that the affidavits show an informed conclusion was reached, but they do not show it was reached before the 1988 accident, only that it was reached by the time Drew signed the affidavits. However, we do not believe that is the only possible interpretation of the affidavits, and the JCC did not directly address Drew’s affidavits anywhere in the order. Therefore, we are unable to determine what, if any, import the JCC might have given the affidavits or how she may have interpreted them. Because a critical finding is not supported by competent substantial evidence, and because we are unable to determine what, if any, consideration the JCC gave the affidavits, we REVERSE and REMAND for clarification.
BOOTH, JOANOS and MINER, JJ., concur.